114 So.2d 450

Gardner DAVIS

v.

Jack WINGARD.

4 Div. 887.

Supreme Court of Alabama.

Sept. 3, 1959.

**536**

C. L. Rowe, Elba, for appellant.

Jackson W. Stokes and Edw. J. Hanlon, Jr., Elba, for appellee.

GOODWYN, Justice.

This is an appeal by the defendant from a final judgment of the circuit court of Coffee County rendered on a jury verdict in favor of plaintiff. The suit was brought pursuant to § 119, Tit. 7, Code 1940, for the wrongful death of plaintiff's minor daughter in an automobile accident. The complaint, consisting of one count, charges simple negligence.

The questions argued and presented relate to the following: (1) The overruling of defendant's motion to discharge the jury selected to try the case; (2) the refusal of defendant's requested affirmative charge with hypothesis; (3) the overruling of defendant's motion for a new trial on the ground that the verdict was against the great weight and preponderance of the evidence; and (4) the refusal of defendant's requested charges B and X. It is our view that none of these constitutes ground for reversal.

(1).

At the hearing on the motion for a new trial the parties stipulated, to the extent here pertinent, substantially as follows: That the defendant had no knowledge or information concerning the relationship of the wife of plaintiff's attorney (Stokes) and the wife of juror Clark; that this case was called in the afternoon about 4:30 at which time the trial court stated to the parties and counsel that the court would qualify the jury; that the jury then would be struck and the case would go over to begin the trial on the next morning; that the

court then propounded on voir dire to the prospective jurors, 47 in number, the usual questions as to their qualifications as jurors to try the case; that, among other questions, the court inquired of the prospective jurors if either was related by blood or marriage to the parties in the case, naming them, or to the attorneys in the case, naming them; that no juror responded to the court's questions; that the court then propounded to the prospective jurors the general question if any prospective juror knew of any reason why he would not be qualified to sit on the trial in the case, or if he knew of any reason why he could not consider the evidence and return a true and just verdict upon the evidence and under the charge to be given by the court; that no juror made response to this general question; that the court then announced that the prospective jurors were qualified, and directed counsel to strike a jury from the 47 jurors present; that a jury was then struck, after which court was adjourned to reconvene at 9:00 o'clock the next morning; that on reconvening the next morning the trial judge made known that juror Clark, one of the jurors selected to try the case, had that morning related to him that said juror's wife was some kind of a cousin to the wife of Mr. Stokes, counsel for the plaintiff, but that the juror did not think of it at the time the jury was being qualified; that said juror's statement was made to the court as he entered the court room door to open court; that, upon being informed of these facts, counsel for defendant moved that the jury be discharged and the case continued or, in the alternative, that the court discharge the jury and permit the parties to strike another jury from the other veniremen present in the court room; that this motion was overruled and the case proceeded to trial with the jury as first impaneled; that counsel for defendant "had at the time known juror Clark for a long number of years and had had many business dealings with him; that he had known that Mr. Clark's wife was the daughter of the late Joe Morrow; that he had

known Attorney Stokes for fifteen or twenty years, and that he had known that Mr. Stokes' wife was the daughter of Dave Vaughn and of Mrs. Vaughn, who was a daughter of the late Andrew Morrow; that he knew that the late Andrew Morrow and the late Joe Morrow were brothers; that at the time the jury list was tendered to him from which to strike a trial jury, the matter of these relationships did not come to the attention of Attorney Rowe [counsel for defendant], nor did he recall the said relationships; that although Attorney Rowe in a business and professional way has been associated with both Juror Clark and Attorney Stokes over a period of years, as aforesaid, he had rarely seen either of the ladies in the case in the past few years."

■ ■ Appellant does not contend that juror Clark was subject to challenge for cause under the provisions of § 55, Tit. 30, Code 1940, as amended by Act No. 260, appvd. Aug. 23, 1955, Acts 1955, Vol. I, p. 605. His position is that he was entitled to the information concerning Clark's relationship with the wife of plaintiff's attorney before striking the jury; that Clark's failure to respond to the questions propounded to the jurors seriously prejudiced him in selecting the jury. It seems to us that the circumstances presented a problem to be resolved by the trial court in the exercise of a sound judicial discretion. We cannot say that there was an abuse of such discretion in overruling appellant's motion. A significant circumstance is that defendant's attorney admittedly had knowledge (although it did not occur to him at the time) of the relationship between juror Clark and plaintiff's attorney.

### (2) and (3).

The accident took place on an unpaved dirt road in a rural section of Coffee County. The road was about 25 feet wide from "ditch to ditch." At the time, appellee was sitting in his four door automobile parked across the road from his brother's house. The car was headed north on the

**538**

right hand side of the road. The brother's house was west of the road. About 12 feet of the traveled portion of the road was left available for use by other vehicles. Appellee's daughter (the deceased) and two other children were in the back seat of the car, all of whom had been in the car about 20 or 30 minutes prior to the accident. The children had been jumping up and down and playing. Appellant and his 12 year old son were traveling north along the road in a pickup truck approaching appellee's car from the rear at a speed of 5 to 15 miles per hour. As the truck approached the car, appellant turned his head in the direction of the house of appellee's brother and continued to look in that direction until the child was hit. While the evidence is conflicting with respect to appellant's looking away from the road there is ample evidence supporting a finding that he was not looking in the direction he was traveling at the time of the accident. There was evidence that appellant did not blow his horn upon approaching the car. The deceased child, who was 7 years of age, got out of the car in the path of appellant's truck. There is no dispute that appellant did not see the child until after she was run over. Appellant's own testimony was that he did not see her before the front wheels had run over her body and they felt a "bump". The evidence is not clear as to how or at just what point the child got out of the car.

■ Appellant argues that he was entitled to the affirmative charge for the reason that appellee's negligence in parking his car in violation of § 25, Subsec. (a), Tit. 36, Code 1940, was the proximate cause of the accident. But, as we see it, the question as to appellee's negligence in this respect (assuming, without deciding, that the act of parking constituted negligence per se) is not determinative. Our view is that the evidence presented a typical case for the jury's determination as to whether appellant was negligent and, if so, whether such negligence was the proximate cause of the accident.

It was not error to refuse to appellant his requested affirmative charge with hypothesis.

■ Nor can we say that the verdict is against the great weight and preponderance of the evidence.

(4).

■ Aside from any other reason, charge B was refused without error because it is predicated on the jury's "belief from the evidence" instead of their "reasonable satisfaction from the evidence." Mills v. Funchess, 266 Ala. 569, 572, 97 So.2d 910; Pittman v. Calhoun, 231 Ala. 460, 464, 165 So. 391; Warner v. Warner, 223 Ala. 524, 137 So. 418.

A charge similar in form to charge B was approved in Louis Pizitz Dry Goods Co. v. Cusimano, 206 Ala. 689, 692–693, 91 So. 779. However, whether the predicate of the charge was faulty was neither discussed nor decided in that case.

■ Charge X is argumentative and misleading. For these reasons, if for no other, its refusal was not error.

Affirmed.

LIVINGSTON, C. J., and LAWSON and SIMPSON, JJ., concur.